1  Maria S. Bellafronto (State Bar No. 161994)
   mbellafr@hopkinscarley.com
2  Jedidiah L. Dooley (State Bar No. 240105)
   jdooley@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 S. First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:     (408) 286-9800
8  Facsimile:     (408) 998-4790

9  Attorney for Plaintiff JUDITH JENKINS

10

11                   UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14  JUDITH JENKINS,                    CASE NO.  3:19-cv-08350-VC

15                Plaintiff             **FIRST AMENDED COMPLAINT FOR:**

16         v.                           1.  **VIOLATIONS OF FEDERAL**
                                            **SECURITIES LAWS;**
17  JEFFREY WILLIAM TRUEMAN, an         2.  **VIOLATION OF STATE OF**
    individual; JOHN BULLOCK, an            **CALIFORNIA SECURITIES LAWS;**
18  individual; JEFF BULLOCK, an        3.  **FRAUD;**
    individual; ALCOVE MEDICAL, INC., a 4.  **AIDING AND ABETTING FRAUD;**
19  Utah corporation; ALCOVE           5.  **BREACH OF FIDUCIARY DUTY;**
    MANUFACTURING AND                      **AND**
20  DISTRIBUTION, INC., a Utah         6.  **FINANCIAL ELDER ABUSE**
    corporation; SCIENCE MEDICAL, LLC
21  dba Blue Harbor Medical, LLC, a Utah   JURY TRIAL DEMANDED
    limited liability company, and DOES 1
22  through 10, inclusive,

23                Defendants.

24

25         Plaintiff JUDITH JENKINS ("Plaintiff" or "Jenkins") alleges as follows:

26                    **I.    NATURE OF THE ACTION**

27         1.    This action arises out of Defendants' fraudulent conduct surrounding Jenkins' $1

28  million investment in Science Medical, LLC.  In order to address Defendants' improper and

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

530\3608583.2

1   unlawful conduct, Jenkins has brought causes of action for Violations of the 1934 Securities and

2   Exchange Act as well as violations of California's Corporations Code.  Additionally, Jenkins has

3   brought causes of action for fraud, aiding and abetting fraud, breach of fiduciary duty and

4   financial elder abuse.  Jenkins seeks to recover her actual damages, punitive damages, and

5   attorney's fees and costs.

6                              **II.    THE PARTIES**

7          2.       Plaintiff Judith Jenkins is an individual residing in San Francisco, California

8   (hereafter, "Jenkins").

9          3.       Jenkins is informed and believes, and thereon alleges, that Jeffrey William

10  Trueman ("Trueman") is an individual who resides in Danville, California.  Jenkins is further

11  informed and believes, and thereon alleges, that Trueman has done business and continues to do

12  business in San Francisco County, California.

13         4.       Jenkins is informed and believes, and thereon alleges, that Science Medical, LLC

14  ("Science Medical") is a Utah Limited Liability Company with its principle place of business at

15  87 Eight Iron Ct., Saratoga Springs, UT 84045.  Jenkins is informed and believes, and thereon

16  alleges, that Science Medical also operates under the fictitious business name of "Blue Harbor

17  Medical."  As described herein, Science Medical sought capital investments for its business from

18  California residents, including residents of San Francisco County, California.

19         5.       Jenkins is informed and believes, and thereon alleges, that Alcove Medical, Inc.

20  ("Alcove Medical") is a Utah Corporation with its principle place of business at 195 W. Main

21  Street, Suite 206, Lehi, Utah County, Utah.

22         6.       Jenkins is informed and believes, and thereon alleges, that Alcove Manufacturing

23  and Distribution, Inc. ("Alcove Distribution", and together with Alcove Medical, collectively the

24  "Alcove Defendants") is a Utah Corporation with its principle place of business at 195 W. Main

25  Street, Suite 206, Lehi, Utah County, Utah.

26         7.       Jenkins is informed and believes, and thereon alleges, that Alcove Defendants are

27  the alter ego of Science Medical, such that the corporate formalities distinguishing the companies

28  should be disregarded, and the Alcove Defendants and Science Medical should be treated as one

in the same.  Jenkins is informed and believes, and thereon alleges, among other things, that the Alcove Defendants operated and treated Science Medical as a division of the Alcove Defendants and failed to adhere to numerous corporate formalities needed for Science Medical to exist as a truly distinct and separate entity.  In particular, Jenkins is informed and believes, and thereon alleges, that the Alcove Defendants and Science Medical are operated by the same individuals, that the same offices were used for both businesses, that Science Medical used the Alcove Defendants' email addresses for purportedly Science Medical business, and that the Alcove Defendants and Science Medical commingled funds.  Additionally, Jenkins is informed and believes, and thereon alleges that Science Medical was initially undercapitalized given the nature of the business, that to date, Science Medical has not made any distributions or dividend payments, and that Defendants have tried to use the corporate status of these entities, particularly using Alcove Medical's name and background, to attract and defraud investors of Science Medical, including Jenkins, as further described herein.  In fact, in Science Medical's 2014 Business Plan (discussed more fully herein below), which was used to solicit investors (including Jenkins), the opening "Executive Summary" section under the heading "Who We Are" specifically touted the accomplishments and experience of the Alcove Defendants executive team; leading potential investors to believe that Science Medical and Alcove Defendants were one in the same.

8.      Jenkins is informed and believes, and thereon alleges, that John Bullock is an individual residing in Saratoga Springs, Utah County, Utah.

9.      Jenkins is informed and believes, and thereon alleges, that Jeff Bullock is an individual residing in Saratoga Springs, Utah County, Utah.

10.      Jeff Bullock is the son of John Bullock (collectively, "the Bullocks").  Jenkins is informed and believes, and thereon alleges, that the Bullocks solicited investments and engaged in business for the benefit of Science Medical in the State of California, including the County of San Francisco.

11.      On information and belief, Jenkins alleges that each of the defendants named herein as Does 1 through 10, inclusive, performed, participated in, or abetted in some manner, the

acts alleged herein, proximately caused the damages alleged herein below, and is liable to Jenkins for the damages and relief sought herein.

12.     On information and belief, Jenkins alleges that, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the defendants was the agent and employee of each of the other defendants and was at all times acting within the course and scope of such agency and employment with the knowledge and approval of each of other defendants.

13.     The identifies of the individuals and entities named as Doe defendants herein are not presently known, but Jenkins will seek to amend the Complaint to properly identify them when their proper names have been ascertained.

### III.     JURISDICTION & VENUE

14.     This action arises out of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et. seq*.  This Court has original subject matter jurisdiction over Exchange Act claims pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C § 78aa.  This Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 in that said claims are joined with substantially related claims under the Securities Act.

15.     This Court has personal jurisdiction over Defendants because Defendant Trueman is a resident of the State of California, and the acts giving rise to this action, in which all Defendants participated, occurred in the State of California.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

### IV.     FACTUAL ALLEGATIONS

**Trueman Became Jenkins' Investment Advisor**

17.     Jenkins is a single woman of 71 years of age residing in San Francisco, California.  Jenkins, for many years, was married to David Jenkins – a partial owner of the San Francisco Giants baseball team.  In or around March 2011, David Jenkins abruptly ended his marriage with Jenkins, leaving her emotionally devastated, vulnerable and financially weakened.

18.     Making matters worse, shortly following her divorce, Jenkins was informed by

1   Merrill Lynch that she would no longer be served by the couples' long time financial advisor,

2   Robert Coleman.  Notably, during the time of their marriage, David Jenkins, with the help of

3   Robert Coleman, had taken care of the couple's finances and significant investments.  As a result,

4   within a short time period, Jenkins lost both her husband and her financial advisor of 11 years and

5   was now facing financial uncertainty without any guidance.

6       19.     Shortly after her divorce, Jenkins received a phone call from Robert Coleman of

7   Merrill Lynch informing Jenkins that Jeff Trueman was going to be her new financial advisor.

8   While Jenkins had no prior relationship with Trueman, Trueman immediately began to take steps

9   to try and obtain Jenkins' trust and confidence. For example, Trueman would routinely take

10  Jenkins out to lunch, coffee and other social outings.  Given Jenkins' emotional state and isolation

11  following her divorce, Trueman's tactics were extremely effective and Jenkins came to view

12  Trueman not only as her financial advisor, but as a friend and trusted confidant.

13              **The Bullocks and Trueman Create Science Medical and Solicit Investors**

14      20.     In or around April 2013, the Bullocks and Trueman created a company called

15  Science Medical, LLC.  Science Medical was a startup medical device company.  Specifically,

16  Jenkins is informed and believes and thereon alleges that the company envisioned having two

17  types of products: (i) a breathing device designed to allow tracheotomy and laryngectomy patients

18  the ability to breathe easily after leaving the hospital while they recover from home, referred to as

19  "The Breathe-EZ System;"; and (ii) single use bed sheets made from recycled materials that

20  contained properties that would stop the spread of disease and infections.

21      21.     Pursuant to the company's written Operating Agreement, Science Medical was to

22  be a manager-managed limited liability company, with the affairs of the company managed by the

23  Board of Managers.  The Board of Managers was to be comprised solely of Jeff Bullock and John

24  Bullock.  Moreover, the Bullocks were to hold a majority interest in Science Medical.

25      22.     Surprisingly, while the Bullocks were running Science Medical and holding a

26  majority interest in the company, neither Jeff nor John Bullock made any meaningful investment,

27  collectively investing merely $50.  Likewise, Jenkins is informed and believes, and thereon

28  alleges that Trueman did not invest any of his own money in the venture.  As a result, the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

Bullocks and Trueman needed to raise money from third parties for their startup venture.

23.    In order to obtain the necessary investors, Science Medical created a "Unit Purchase Agreement."  Notably, the Unit Purchase Agreement disclosed that the Bullocks named Trueman as Science Medical's Chief Financial Officer, and planned to provide him with 10,000 shares per year as partial compensation for his services.  Additionally, in at least one version of the Unit Purchase Agreement, Science Medical included the following statement acknowledging that it did not have any actual contacts with hospitals and could not sell its breathing device until it received clearance from the Food and Drug Administration (the "FDA"):

5.    The Company does NOT have any contracts with any hospitals or other providers of medical services to purchase any products.  Indeed, the Company's product is not yet developed and cannot be marketed and sold until such product has received 510(k) clearance from the U.S. Food and Drug Administration.

24.    Further, according to the Unit Purchase Agreement, Science Medical needed to raise only $500,000 from investors in order to get The Breathe-EZ System off the ground and believed that it could get the necessary FDA approval for approximately $40,000.  In fact, Trueman told certain investors (other than Jenkins) the company was "only looking for $500,000 from 5 different investors, and didn't expect to have to raise any more after that."

25.    In the early part of 2013, Trueman and the Bullocks began searching for investors to fund their startup business.  Jenkins is informed and believes based on financial statements obtained within two years of the filing of this action, and thereon alleges, that by the end of 2013, Defendants convinced an investor by the name of Gary Sokoll to invest $200,000 in Science Medical.  Jenkins is informed and believes based on financial statements obtained within two years of the filing of this action, and thereon alleges, that by the end of 2014, Defendants were able to obtain an additional $150,000 from Mr. Sokoll, as well as another $325,000 from other investors - for a total of $675,050.  Notably, this was $175,000 more than what Trueman initially stated the company needed to raise for the venture to be operational.

26.    Jenkins is informed and believes, and thereon alleges, that investors other than Jenkins were provided disclosures about the structure of the company, the equity interests of the various members, the projections about *only needing to raise $500,000 in capital*, and the fact

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

530\3608583.2

- 6 -

FIRST AMENDED COMPLAINT

CASE NO. 3:19-CV-08350-VC

that *Science Medical did not have FDA approval for its products.*

### Trueman Convinces Jenkins to Invest in Science Medical

27.     Despite the fact that Defendants had raised $675,050 by the end of 2014, by the middle of 2015, Science Medical had burned through all of its investments and the company was in desperate need of capital.  Making matters worse, the company still did not have a viable FDA approved breathing device to take to market and/or any meaningful sales revenue.  As a result, Defendants decided to leverage Trueman's relationship with Jenkins to get her to invest significant money into Science Medical, but without disclosing to her the aforementioned fact that Science Medical had already spent approximately $675,000 using several other investors' money to market a product that was becoming dead in the water.

28.     Shortly thereafter, Trueman, as Jenkins' trusted financial advisor at Merrill Lynch, took Jenkins to a baseball game.  During the game, Trueman advised Jenkins about an investment opportunity in Science Medical.  While Jenkins had never heard of Science Medical, according to Trueman, Science Medical was an emerging company based out of Utah that provided a great investment opportunity for Jenkins with great potential upside and the ability to "save lives" from the breathing device.

29.     In subsequent conversations, Trueman represented that Science Medical was involved in the development and sale of various medical devices, including the breathing device and disposable bed sheets used in hospitals and treatment centers.  Science Medical, however, needed additional capital to develop and market the breathing device that was endorsed by Ken Hargett, a well-known respiratory specialist who worked at the Methodist Hospital in Houston, Texas *and who was placing a significant number of purchase orders with Science Medical* for the breathing machine.  Trueman further stated that the company would quickly have an annual revenue stream in the millions of dollars based on the significant sales of the breathing machine alone.

30.     To further induce Jenkins to invest in Science Medical, Trueman provided her with two documents: (i) a 2014 Business Plan for Science Medical (the "Business Plan") relating to The Breathe-EZ System; and (ii) a marketing flyer for The Breathe-EZ System (the "Marketing

Flyer"). Jenkins is informed and believes, and thereon alleges, that the Business Plan and Marketing Flyer were prepared by, or at the direction of, the Bullocks.

31.     Included in the Business Plan that Defendants prepared were a number of statements further designed to induce Jenkins to invest in Science Medical. Those statements included the following:

(a)     That each device would cost between $6,500 -- $10,000, thereby generating potential annual revenue of $1.35 Billion in the U.S. alone;

(b)     That Science Medical was projected to have a $3.8M gross margin in 2015, a $17.4M gross margin in 2016, and a $38M gross margin in 2017;

(c)     That profit distributions for Science Medical were projected to be $1.1M for 2015, $9.1M for 2016, and $18.5M for 2017;

(d)     That the first verbal purchase order was placed with the Methodist Hospital in Texas which should start producing revenue by July 2014;

(e)     That the funds invested in Science Medical would be used only for creating and selling The Breath-EZ System;

(f)     That by the end of 2015, net income associated with the Breathe-EZ System would be approximately $2.5 million and Net Cash Flow for the company would also be $2.5 million;

(g)     That only after the company became profitable would the startup costs (such as travel, patent fees and legal expenses) be reimbursed to the Bullocks; and

(h)     That Science Medical was comprised of the Executive Team of the Alcove Defendants, and Science Medical would leverage the relationships and distribution channels that the Alcove Defendants had developed.

32.     Likewise, the Marketing Flyer indicated that The Breathe-EZ System was currently an operable product, and even contained an endorsement from a California couple ("Jack and Melissa S.") who purportedly had been using the breathing machine – statements that were wholly contradictory to statements provided to other investors, but never made to Jenkins.

33.     Importantly, there was no mention to Jenkins that The Breathe-EZ System still needed FDA approval. Nor was there any mention that Science Medical did not have any actual purchase orders or similar contracts for the breathing machine, or that the company was considering putting the development of the breathing machine *on hold* while they pursued, and spent Jenkins' money on, disposable sheets instead.

34.     In or around August 2015, based on the statements from Trueman which she

1   reasonably believed to be true, as well as the statements in the Business Plan and Marketing

2   Flyer, Jenkins invested $200,000 in Science Medical for a 2 percent interest in the company (the

3   "August Investment").  The wire transfer from Jenkins to Science Medical was effectuated by

4   Trueman while he was working for Merrill Lynch, even though he admitted that this investment

5   opportunity was "outside Merrill Lynch."  Jenkins was not provided a copy of a Unit Purchase

6   Agreement or any other disclosures about the financial state of the company, including how much

7   money the Defendants had already expended with no viable product to show, that no contracts

8   with hospitals had been confirmed, and that no FDA approval was given.  In fact, Jenkins was not

9   provided any documentation whatsoever to sign in connection with her investment.

10              **The Sales Pitch to Jenkins for Science Medical Contains False Statements**
              **and Omits Material Facts and Information**

11

12              35.      While Jenkins believed that she was investing in a promising medical device

13   company, within two years of the filing of this action, Jenkins learned that the statements she

14   received were false and misleading, that numerous material facts were omitted from the sales

15   pitch she received, and that Science Medical was actually a failing company in desperate need of

16   capital.  Jenkins is informed and believes, and thereon alleges, that based on financials received

17   within two years of the filing of this action, by the end of July 2015, Science Medical had sold

18   less than $6,000 in product  – a far cry from the millions in sales projected in the written literature

19   provided to her.  Moreover, Science Medical <u>was on pace to lose over $850,000 in its first three

20   years of operations, and would lose over $300,000 in 2015 alone</u>.  Further, while Science Medical

21   had been able to stay in business based on capital investments from other investors, <u>by the time

22   that Jenkins was asked to invest in the company, all of Science Medical's funds had been depleted

23   and Science Medical only had $10 in its bank account</u>.  None of this critical financial information

24   was disclosed to Jenkins.

25              36.      Even more troubling, The Breathe-EZ System was not in fact sellable or useable

26   in its current form.  Trueman never disclosed that the Breathe-EZ System could not in fact be sold

27   in 2015 because *the device still needed FDA approval*.  Nor was there any mention that Science

28   Medical still needed to enter into a licensing agreement with the owner of the component parts

1  that made up the device.  Moreover, there was no mention that these tasks were not accomplished

2  despite the fact that Science Medical was able to raise well in excess of what it previously stated

3  it needed to bring the product to market.

4       37.    Further still, the Bullocks, founders of the company, invested little to no capital

5  in the business but held over a 76% interest in Science Medical.  Likewise, Trueman himself

6  invested no capital, but held a five percent interest; presumably to compensate him for his finding

7  and convincing investors to contribute capital to the business.  Therefore, while Defendants

8  wanted Jenkins to invest *her money*, the founders did not have enough faith in the company to put

9  their own funds at risk.  Not surprisingly, neither Trueman, the Bullocks, nor anyone else at

10  Science Medical ever provided Jenkins with a Unit Purchase Agreement that presumably would

11  have contained at least some of those disclosures.

12       38.    Importantly, had Jenkins known the aforementioned material facts, she would not

13  have invested in Science Medical as it was evident that the company had no real prospects of

14  becoming profitable, and was bleeding money with its breathing device lacking FDA-approval.

15  **Science Medical Seeks Additional Funds From Jenkins**

16       39.    While Jenkins was under the impression that Science Medical would use her

17  August Investment predominantly in marketing and developing for the breathing device

18  consistent with what the Business Plan represented, Jenkins is informed and believes and thereon

19  alleges that little to none of her investment related to this purpose.  Rather, Jenkins is informed

20  and believes and thereon alleges that based on financial records received within two years of the

21  filing of this action, that her August Investment was used for travel and expenses for not only

22  what turned out to be the failed product, but also for payments to the Defendants, including the

23  Bullocks and Trueman.

24       40.    By the middle of December 2015, the Bullocks and Science Medical had spent

25  the vast majority of Jenkins' August Investment, and the company was once again in need of

26  additional funds.  As a result, Trueman asked Jenkins to invest an additional $100,000 in Science

27  Medical, and she did so (the "December Investment") for an additional 1% interest in the

28  company.  Importantly, no further disclosures were made about the company or the status of the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

530\3608583.2

- 10 -

FIRST AMENDED COMPLAINT

CASE NO. 3:19-CV-08350-VC

breathing device at that time.  Nor were any corrections made to the prior disclosures.

41.     Following the August Investment and December Investment, Trueman continued to request that Jenkins invest funds into Science Medical.  At no time, however, did Trueman, or anyone else from Science Medical state that it was *abandoning* the breathing device and focusing solely on the disposable sheet product.  Nor were there any disclosures that Science Medical still did not have permission to use the component parts of the breathing device, the machine still lacked FDA approval, precluding its sale, not one single purchase order was executed for the product, and the esteemed respiratory specialist, Ken Hargett, at the Methodist Hospital in Texas, had lost interest in the product – all facts which Jenkins later discovered were communicated to other investors, including but not limited to Gary Sokoll, and withheld from Jenkins in order to induce her to invest more money into the startup.

42.     Nevertheless, in or around January 2016, in order to convince her to invest even more money, Trueman, the Bullocks and Science Medical's sales team paid for and arranged for Jenkins to fly to Utah, stay in a Grand American Hotel & Resort, and see the company's offices and meet the founders in person.  During this meeting, Trueman and the Bullocks continued to tout the company as a great investment opportunity that would be profitable in the near future, focusing solely on the disposable bed sheets.  Consistent with prior discussions, no mention was made by anyone associated with Science Medical about the financial hardships that the company was facing, let alone the fact that The Breathe-EZ System was a failed device, essentially abandoned by the founders.

43.     Following the meeting in Utah, in or around January 2016, Trueman had a meeting with Jenkins and her accountant regarding a further investment in Science Medical.  During that meeting, Trueman this time discussed at length Science Medical's proclaimed burgeoning bed sheet business.  Trueman was asking Jenkins for another $1 million at this meeting.  Just as with his prior pitches, Trueman represented that there was great demand for Science Medical's products (this time the bed sheets) and that Science Medical currently had several pending orders.  Again, notably missing from their discussion was any mention of how The Breathe-EZ System was a total failure and that all Jenkins' money (and the other investors'

1    monies) had all been depleted with no progress on development or sales of any viable Science

2    Medical product.

3          44.      On or about January 14, 2016, based on the statements made by Trueman and the

4    Bullocks, Jenkins invested another $700,000 in Science Medical making her total investment

5    $1,000,000 and raising her interest by another 7%. Incredibly, despite the fact that Jenkins

6    provided the company with 60% of its funding, she only held a 10% interest.

7                   **The Bullocks and Trueman Continue to Falsely Present**
                     **a Positive Picture of Science Medical**

8

9          45.      Following Jenkins' Investments, the Bullocks continued to manage Science

10   Medical, and the Bullocks and Trueman continued to convey a promising message about the

11   company, which Jenkins believed, despite the fact that The Breathe-EZ System never came to

12   fruition.

13          46.      For example, in or around December 2016, Science Medical announced a *new*

14   *management team* and Trueman told Jenkins that he was excited about the new management team

15   and what it meant for the company. On or about January 8, 2017, Defendants provided the

16   investors with a new business plan, under the apparently new name of "Blue Harbor Medical"

17   (not Science Medical), touting the upside to the *bed sheet* business, saying nothing about failed

18   The Breath-EZ System, including how they had abandoned their effort to develop and market it

19   for sale. Additionally, Science Medical began sending out investor newsletters updating them on

20   the progress of the company. While Trueman stated that "investor money has fizzled out," he

21   told the investors that "there is talk of obtaining grant money to keep Blue Harbor afloat" and that

22   Jeff Bullock was looking to secure $3 million in funding as of December 2016 in order to finance

23   a "recycling reactor" for the sheet business. Never once, however, in any of the statements sent

24   to Jenkins did Trueman, the Bullocks or Science Medical raise any concerns about the viability of

25   Science Medical, the failed breathing device or its ability to turn profitable. Rather, on or around

26   December 27, 2016, Trueman emailed a message to the investors, including Jenkins, stating:

27               "There have been some significant changes at Science Medical
              (Blue Harbor Medical), which I feel will be greatly beneficial!  I'm

28              reinvigorated and excited about the future of this company."

47.     Similarly, in or around February 2016, Trueman forwarded Jenkins an email regarding a "good meeting" with the hospital about the sheets.

48.     As a result of all of the information and statements provided by Defendants, through the end of 2017, Jenkins still believed that the Science Medical was a viable entity and likely to become profitable in the near future.

**Science Medical Continues to Struggle Amid
Gross Mismanagement by the Bullocks**

49.     In direct contrast to the glowing picture that Defendants were painting to Jenkins in order to solicit her $1 million investment in Science Medical, in actuality, Science Medical was continuing to struggle.

50.     By the end of 2015, unbeknownst to Jenkins, as stated above, Science Medical had determined that it would be unable to bring the breathing machine to market, and it decided to abandon the product.  However, Jenkins was lead to believe that the breathing machine was still being developed and marketed for sale.

51.     Similarly, while Science Medical was attempting to develop and market its bed sheets, it was unable to obtain any traction in the market and was not making any significant sales.  In fact, Jenkins is informed and believes, and thereon alleges, that in all of 2017, the company only recorded approximately $46,000 in sales.

52.     Moreover, rather than use the company's dwindling cash (comprised solely of Jenkins' investment) to develop and market the products, starting in 2016, Jenkins is informed and believes and thereon alleges that Science Medical spent hundreds of thousands of dollars on a lawsuit against a former consultant and another company in which the Bullocks were involved, the case of Science Medical, LLC v. Securlyft, Corp., et al.; case number 2:18-cv-00773-DBP in the United States District Court for the State of Utah, Central Division. While Science Medical obtained at least one judgment in its favor from the lawsuits, Jenkins is informed and believes and thereon alleges that the judgment(s) were not recorded on Science Medicals' books and records, and no money received from the lawsuits was ever reflected on Science Medical's books and records. As a result, by all appearances, Science Medical did not obtain any financial benefit from

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

530\3608583.2

- 13 -

FIRST AMENDED COMPLAINT

CASE NO. 3:19-CV-08350-VC

1  the costly lawsuits in which the investors' money (including Jenkins' $1 million) was spent and

2  prior to the company turning a profit.

3      53.    Making matters worse, Jenkins is informed and believes and thereon alleges that

4  based on financial information obtained within two years of the filing of this action, the Bullocks

5  and Trueman used the Science Medical investors' funds (including Jenkins' $1 million

6  investment) for their own personal benefit, including financing other ventures in which the

7  Bullocks were involved.

8      54.    Given the foregoing, the reality of the situation is that since the time Jenkins

9  made her investments, Science Medical still has no real hope of becoming profitable – a fact

10 known to Defendants but repeatedly concealed from Jenkins.

11          **Jenkins Becomes Concerned About Her Investment in Science Medical,**
          **Particularly After Trueman's Departure from the Company**
12

13     55.    Jenkins is informed and believes and thereon alleges that Trueman resigned from

14 Science Medical in or around early January 2017.  The company's new Chief of Operations

15 ("COO"), Jess Campbell, had nevertheless sent Jenkins, and other investors, only days earlier, an

16 email on or about December 27, 2016, assuring the investors that the Bullocks were "maintaining

17 their role as Founders" while the company had new management changes.  On or about January

18 8, 2017, Jess Campbell (the company's new COO) sent the investors the 2017 Blue Harbor

19 Business Plan under the new CEO named Michelle Scott), representing it to be the "current

20 business plan for the next 36 months" and claiming it as "still dynamic."

21     56.    On or around January 2017, after Trueman left Science Medical, he began asking

22 Jenkins to consider more investment options with him, such as real property investments out of

23 state.

24     57.    Unbeknownst to Jenkins, in early 2017, Trueman had reported to another

25 investor, Gary Sokoll, that he suspected the Bullocks were reckless with the Science Medical

26 money and committing fraud on the investors.  Accordingly, also unbeknownst to Jenkins as of

27 early 2017, Trueman concocted a plan to force the Bullocks to provide Science Medical financials

28 for the investors.  Jenkins is informed and believes and thereon alleges that Trueman engaged the

help of his brother-in-law's law firm, Hall, Bishop & Hall to send a letter (written by Trueman) on or about April 20, 2017 to the Bullocks on behalf of the Science Medical investors, explaining the mission as he stated in an April 13, 2017 email to the investors: "not expecting to find anything off color" but to "make sure there is accountability."

58.     Starting in 2018, Jenkins started to become concerned about the status of Science Medical.  In particular, by May 2018, Jenkins had not yet received her K-1 for the 2017 year.  Additionally, Jenkins had not received any of the financial documents from Science Medical that she requested earlier in the year.

59.     In addition, on or about March 15, 2018, Trueman notified Jenkins' accountant that he was no longer working as a financial advisor working in the Wealth Management profession.

60.     On or about May 8, 2018, Jenkins' accountant demanded the company's 2017 tax information and the 2018 financial projections from the Bullocks, but Jenkins never received them from the Bullocks.  Instead, someone named "Jeff Phipps" claimed to be the new COO (replacing Jess Campbell after he resigned within a couple of months) and sent Jenkins' accountant her K-1's but no financial information for the company.

61.     When Jenkins finally received her K-1 on or about May 31, 2018, she was shocked to see a loss allocated to her in the amount of $18,052 for 2017 – meaning the company lost approximately $180,000 for that year.  Given the statements about the new management in on or about December 27, 2016, the updated 2017 business plan, and Defendants' repeated promising and positive statements about the outlook of the company, she expected the company to be profitable, or at least near profitable.

62.     Additionally, on or about June 1, 2018, Jeff Phipps, purportedly on behalf of Science Medical, responded to Jenkins' accountant's request for Science Medical's financial documents by refusing to provide the requested documents, claiming that Jenkins never executed any Operating Agreement or Unit Purchase Agreement, claiming Jenkins had no right to obtain such information because she was not a Management Member of the company, notwithstanding her investment of $1 million (reflecting 57% of the total investment made to Science Medical).

63.     Given the K-1, along with Science Medical's refusal to provide the financial information requested, Jenkins began to investigate Science Medical, as well as her investment in the company.  It was only through this investigation that Jenkins became aware of the true facts surrounding her investment in Science Medical and the fraud that Defendants perpetuated on her.

**FIRST CAUSE OF ACTION**
**(Violations of §10 of the Exchange Act and 10b-5 –**
**Against Trueman, Science Medical and the Alcove Defendants)**

64.     Jenkins realleges and incorporates the allegations in paragraphs 1 through 61 of this Complaint as though set forth fully herein.

65.     This Count is asserted against Science Medical and Trueman and is based upon section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.     Science Medical and Trueman violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

- Employed devices, schemes and artifices to defraud;

- Made untrue statements of material facts or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

- Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Jenkins.

67.     Science Medical, through its then acting Chief Financial Officer Trueman, disseminated or approved the following false statements and omissions, which Science Medical and Trueman either knew or deliberately disregarded were misleading:

(a)  That The Breathe-EZ System was a viable product with FDA approval and was expected to generate millions of dollars in revenue in 2015 and 2016 and would be profitable in the near future.  In fact, the Breathe-EZ System was not a viable product because it lacked FDA approval and Science Medical did not have the proper licensing agreements to manufacture the product;

(b)  That Science Medical had purchase orders in place for The Breathe-EZ System.  In fact, Science Medical did not have any such orders;

(c)  That the company was expecting to be profitable by end of 2015.  In fact, there was no viable revenue stream that would plausibly have allowed this to occur;

(d) Science Medical and Trueman omitted that prior to Jenkins' investments, Science Medical had raised $675,000 dollars from other investors, but had spent almost the entire sum, and failed to get the Breathe-EZ System to market;

(e)  Science Medical and Trueman omitted that Science Medical originally told investors that it planned on raising $500,000 and did not expect to need to raise any additional funds;

(f)  Science Medical and Trueman omitted that neither Trueman nor the Bullocks made any substantial monetary investments in the Science Medical;

(g)  Science Medical and Trueman omitted that Science Medical did not have FDA approval for the Breathe-EZ System;

(h)  Science Medical and Trueman omitted that Science Medical did not have the necessary licenses to use the components needed to manufacture the Breathe-EZ System;

(i)  Science Medical and Trueman omitted that as of the end of 2015, Science Medical had decided to abandon the marketing for the Breathe-EZ System and the touted hospitals and physicians that were initially interested in placing orders were no longer interested in the product;

(j)  Science Medical and Trueman omitted that as of the end of July 2015, Science Medical only had $10 in its bank account;

(k)  Science Medical and Trueman omitted that Science Medical had lost $373,492 in 2014 and was on pace to lose over $300,000 in 2015;

(l)  Science Medical and Trueman omitted that as of the end of 2015, Science Medical did not have any substantial orders for any of its products; and

(m) Science Medical and Trueman omitted that Science Medical was not going to come anywhere close to the projections set forth in its 2014 Business Plan.

68.     Science Medical and Trueman acted with scienter in that they knew the representations made to Jenkins were false, misleading, and contained material and significant omissions.  Indeed, Jenkins is informed and believes, and thereon alleges, that as Chief Financial Officer, Trueman had access to the company's financial information, knew the strategic direction of Science Medical, and knew the company was unlikely to be profitable anytime in the foreseeable future.  Moreover, Trueman made statements to both Jenkins and other investors that indicated he was in close contact with the Bullocks (the founding members), knew about the direction of the company and knew information that contradicted the picture of a thriving company that he portrayed to Jenkins.  Despite knowing that the statements made to Jenkins were false and misleading, Science Medical and Trueman made such statements and omissions,

1    because they knew the company was running out of money and desperately needed an injection of

2    capital.

3          69.    Jenkins relied on the false and misleading statements by Science Medical and

4    Trueman in deciding to invest in Science Medical.

5          70.    As a proximate result of Truman's and Science Medical's fraud and deceit and the

6    facts alleged herein, Jenkins was damaged in the an amount not less than $1,000,000,

7    representing the difference between the value paid by Jenkins for her interest in Science Medical

8    and the actual value of her interest in Science Medical.

9          WHEREFORE, Jenkins pray for relief as set forth below.

10
                            **SECOND CAUSE OF ACTION**
                 **(Violation of § 20 of the Exchange Act – Against the Bullocks)**
11

12         71.    Jenkins realleges and incorporates the allegations in paragraphs 1 through 68 of

13   this Complaint as though set forth fully herein.

14         72.    As set forth above, the Science Medical and Trueman violated federal securities

15   laws in connection with their solicitation of Jenkins.

16         73.    The Bullocks acted as controlling persons of Science Medical and/or Trueman

17   within the meaning of §20(a) of the Exchange Act. The Bullocks, as founding members and

18   managing members of Science Medical, exercised actual power and control over Trueman and

19   Science Medical.  The Bullocks held a majority interest and controlled the hiring and firing

20   decisions of Science Medical.  In fact, the Bullocks were the ones that (i) hired Trueman to be the

21   Chief Financial Officer of Science Medical; and (ii) incentivized Trueman to find investors by

22   offering him additional interests in the company in connection with his role as CFO.  The

23   Bullocks controlled Trueman.

24         74.    Additionally, because of their position of control and authority as senior

25   management, the Bullocks were able to, and did, control the information that Science Medical

26   disseminated to investors, including Jenkins.  Simply put, by virtue of their position with Science

27   Medical, the Bullocks had the power and authority to cause Science Medical to engage in the

28   wrongful conduct complained of herein.

75. By reason of the above conduct, the Bullocks are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Trueman and/or Science Medical.

WHEREFORE, Jenkins prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**(Violation of Cal. Corp. Code §§ 25401, 25501 –
Against Science Medical and the Alcove Defendants)**

76. Jenkins reallege and incorporate the allegations in paragraphs 1 through 73 of this Complaint as though set forth fully herein.

77. Jenkins' interest in Science Medical constitutes a "security" as defined by California Corporations Code § 25019.

78. As set forth above, Science Medical sold a security to Jenkins by making written and oral communications which included untrue statements of material fact and/or omitted material facts necessary in or to make the statements made, in light of the circumstances under which they were made, not misleading.

79. Science Medical's false statements and omissions were made with the intent to induce Jenkins to purchase an interest in Science Medical.

80. As a proximate result of Science Medical's conduct, Jenkins is entitled to rescind the transactions wherein she invested in Science Medical, and seeks such relief accordingly.

WHEREFORE, Jenkins prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
**(Fraud/Misrepresentation –
Against the Trueman, Science Medical , and the Alcove Defendants)**

81. Jenkins realleges and incorporates the allegations in paragraphs 1 through 78 of this Complaint as though set forth fully herein.

82. As further described above, in connection with their attempts to get Jenkins to invest a significant amount of money in Science Medical, Trueman and Science Medical failed to disclose material information regarding the company and made significant misrepresentations, including but not limited to the financial status of the company.

83. Trueman and Science Medical knew the statements made to Jenkins were false.

1    Moreover, Trueman and Science Medical knew that they failed to disclose material information

2    about Science Medial to Jenkins.

3         84.    Trueman and Science Medical made the representations and concealments stated

4    hereinabove with the intention to deceive and induce Jenkins to act in reliance on these

5    representations and invest in Science Medical.

6         85.    Jenkins, at the time these representations were made by Trueman and Science

7    Medical and at the time Jenkins made the investments in Science Medical, was ignorant of the

8    falsity of the representations and believed them to be true.  In reliance on Trueman's and Science

9    Medical's representations Jenkins was induced to and did invest in Science Medical.  Had Jenkins

10   known the actual facts, she would not have taken such actions.

11        86.    Jenkins was justified in relying on Trueman's and Science Medical's

12   representations because Trueman was Jenkins financial advisor and had worked hard to obtain her

13   trust and confidence.  Moreover, Trueman and Science Medical controlled Science Medical's

14   finances as well as the communications between Science Medical and its investors, including

15   Jenkins.  As a result, Jenkins had little choice but to rely upon the representations she received

16   about Science Medical.

17        87.    As a proximate result of Trueman's and Science Medical's fraud and deceit and

18   the facts alleged herein, Jenkins was damaged in an amount not less than $1,000,000,

19   representing the difference between the value paid by Jenkins for her interest in Science Medical

20   and the actual value of her interest in Science Medical.

21        88.    Trueman's and Science Medical's aforementioned actions were done willfully,

22   intentionally and maliciously and with an express intent to harm Jenkins.  As a result, Jenkins

23   requests that punitive damages be assessed against Trueman and Science Medical.

24        WHEREFORE, Jenkins prays for relief as set forth below.

25                          **FIFTH CAUSE OF ACTION**
                    **(Aiding and Abetting Fraud – the Bullocks)**
26

27        89.    Jenkins realleges and incorporates the allegations in paragraphs 1 through 87 of

28   this Complaint as though set forth fully herein.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

530\3608583.2                              - 20 -

90.     The Bullocks knew that Trueman and Science Medical were soliciting Jenkins to invest in Science Medical.

91.     The Bullocks knew that Trueman and Science Medical were making false and misleading statements, as well as material omissions, in Science Medical and Trueman's solicitation of Jenkins.

92.     The Bullocks gave substantial assistance and/or encouragement to Trueman and Science Medical in connection with the false and misleading statements, as well as material omissions, made to Jenkins.

93.     As a direct and proximate cause of the Bullocks actions, Jenkins has been damaged in an amount to be determined at trial, but not less than $1,000,000.

94.     The Bullocks aforementioned actions were done willfully, intentionally and maliciously and with an express intent to harm Jenkins.  As a result, Jenkins requests that punitive damages be assessed against the Bullocks.

WHEREFORE, Jenkins prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty – the Bullocks)

95.     Jenkins realleges and incorporates the allegations in paragraphs 1 through 92 of this Complaint as though set forth fully herein.

96.     Science Medical was a manager managed LLC.

97.     The Bullocks were managers of Science Medical.

98.     As a managers, the Bullocks owed the members of Science Medical, including Jenkins, a fiduciary duty of loyalty and a duty of care.  These duties include, but are not necessarily limited to, the Bullocks' obligation to make full and truthful disclosures about the financial health of Science Medical, to properly manage the assets of Science Medical, to provide full and complete financial records to its investors upon their request, including Jenkins, and to refrain from using any property, profit, and/or funds of Science Medical for their sole interest.

99.     As alleged hereinabove, the Bullocks have violated their fiduciary duties of loyalty and care to Jenkins by, among other things, misrepresenting the financial health of Science

1   Medical as well as the purpose and intentions of the business, failing to properly manage Science

2   Medical's assets, failing to provide Jenkins with the true and complete facts relating to Science

3   Medical, failing to provide her with the company's financial records upon request, and using

4   Science Medical's funds for their own personal use.

5         100.    As a direct and proximate cause of the Bullocks' actions, Jenkins has been

6   damaged in an amount to be determined at trial, but not less than $1,000,000.

7         101.    The Bullocks aforementioned actions were done willfully, intentionally and

8   maliciously and with an express intent to harm Jenkins.  As a result, Jenkins requests that punitive

9   damages be assessed against the Bullocks.

10        WHEREFORE, Jenkins prays for relief as set forth below.

11                         **SEVENTH CAUSE OF ACTION**
                    **(Financial Elder Abuse – Against all Defendants)**
12

13        102.    Jenkins realleges and incorporates the allegations in paragraphs 1 through 99 of

14   this Complaint as though set forth fully herein.

15        103.    Defendants' conduct constitutes financial elder abuse in violation of California

16   Welfare & Institutions Code section 15610.30 (the "Elder Abuse and Dependent Adult Civil

17   Protection Act").  This statute provides that financial abuse occurs when "a person or entity…

18   [t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult

19   to a wrongful use or with intent to defraud, or both…*or assists in so doing*."

20        104.    Science Medical took, secreted, misappropriated and/or retained $1 million from

21   Jenkins when she was over sixty-five years of age.

22        105.    Further, as stated above, Defendants Trueman and the Bullocks assisted Science

23   Medical in taking, secreting, misappropriating and/or retaining $1 million from Jenkins when she

24   was over sixty-five years of age.

25        106.    Defendants' conduct was outrageous.  At the time Jenkins made her investments

26   in Science Medical, all Defendants knew that Science Medical was a failing company and had no

27   real means of obtaining profitability in the near future.  Despite these facts, Defendants prayed on

28   Jenkins and used her trust and confidence in Trueman to extract $1 million from her in order to

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

530\3608583.2

- 22 -

keep Science Medical afloat.  In doing so, Defendants intentionally and repeatedly made false and misleading statements that (i) misrepresented the financial status of the company; and/or (ii) omitted material information from Jenkins.

107.    Jenkins has been damaged by Defendants' aforementioned financial elder abuse and are therefore entitled to damages under Welfare & Institutions Code section 15657, including (1) reasonable general damages; (2) treble damages; and (3) statutory attorney's fees and costs.

WHEREFORE, Jenkins prays for relief as set forth below.

## V.    PRAYER FOR RELIEF

Accordingly, Jenkins prays for judgment against Defendant as follows:

AS TO THE FIRST CAUSE OF ACTION:

1.    For damages according to proof at trial in an amount no less than $1,000,000, plus interest;

2.    For costs of suit herein;

3.    For interest as allowed by law; and

4.    For such other and further relief as the Court deems just and proper.

AS TO THE SECOND CAUSE OF ACTION:

1.    For damages according to proof at trial in an amount no less than $1,000,000, plus interest;

2.    For interest as allowed by law;

3    For costs of suit herein; and

4.    For such other and further relief as the Court deems just and proper.

AS TO THE THIRD CAUSE OF ACTION:

1.    For rescission of Jenkins investment in Science Medical;

2.    For interest as allowed by law; and

3.    For such other and further relief as the Court deems just and proper.

AS TO THE FOURTH CAUSE OF ACTION:

1.    For damages according to proof at trial;

2.    For punitive damages;

1    3.    For costs of suit herein;

2    4.    For interest as allowed by law; and

3    5.    For such other and further relief as the Court deems just and proper.

4    AS TO THE FIFTH CAUSE OF ACTION:

5    1.    For damages according to proof at trial;

6    2.    For punitive damages;

7    3.    For costs of suit herein;

8    4.    For interest as allowed by law; and

9    5.    For such other and further relief as the Court deems just and proper.

10   AS TO THE SIXTH CAUSE OF ACTION:

11   1.    For damages according to proof at trial;

12   2.    For punitive damages;

13   3.    For costs of suit herein;

14   4.    For interest as allowed by law; and

15   5.    For such other and further relief as the Court deems just and proper.

16   AS TO THE SEVENTH CAUSE OF ACTION:

17   1.    For damages according to proof at trial;

18   2.    For treble damages pursuant to California Welfare & Institutions Code section

19         15610.30, et.seq., as the Court or jury shall award;

20   3.    For attorneys' fees pursuant to statute;

21   4.    For costs of suit herein;

22   5.    For interest as allowed by law; and

23   6.    For such other and further relief as the Court deems just and proper.

24

25

26

27

28

1

## VI.   JURY TRIAL DEMANDED

2          Jenkins hereby demands a trial by jury.

3

4   Dated: November 3, 2020                    HOPKINS & CARLEY
                                               A Law Corporation
5

6
                                               By: /s/ *Maria S. Bellafronto*
7                                                  Maria S. Bellafronto
                                                   Jedidiah L. Dooley
8                                                  Attorneys for Plaintiff Judith Jenkins

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Crystal R. Knode, declare:

I am a citizen of the United States and employed in Santa Clara County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is The Letitia Building, 70 S First Street, San Jose, California  95113-2406.  On November 3, 2020, I electronically filed the attached document with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

1. **FIRST AMENDED COMPLAINT FOR: 1. VIOLATIONS OF FEDERAL SECURITIES LAWS; 2. VIOLATION OF STATE OF CALIFORNIA SECURITIES LAWS; 3. FRAUD; 4. AIDING AND ABETTING FRAUD; 5. BREACH OF FIDUCIARY DUTY; AND 6. FINANCIAL ELDER ABUSE**

I also served the attached document

☒   by electronically mailing a true and correct copy through Hopkins & Carley's electronic mail system to the email address(s) set forth below, or as stated on the attached service list

Cole S. Cannon, Esq.
Kyle Reeder, Esq.
Cannon Law Group, PLLC
124 South 600 East
Salt Lake City, UT 84102
Email:  cole@cannonlawgroup.com; kyle@cannonlawgroup.com
**Attorneys for Defendants**
**JEFFREY BULLOCK, JOHN BULLOCK, ALCOVE MEDICAL, INC. and SCIENCE MEDICAL, LLC DBA BLUE HARBOR MEDICAL, LLC**

B. Ray Zoll
Chad Shattuck
Tycksen & Shattuck LC Law firm of Utah
12401 S. 450 E. unit E-1
Draper, Utah 84020
Telephone: 801-748-4081
Email:  rayzoll@hotmail.com; chad@tyshlaw.com
**Attorneys for Defendant**
**JEFFREY WILLIAM TRUEMAN**

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 15, 2020, at San Jose, California.

*/s/ Crystal Knode*
Legal Executive Assistant to
Jedidiah L. Dooley, Esq.

530\3608583.2

FIRST AMENDED COMPLAINT                    CASE NO. 3:19-CV-08350-VC